UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 18 CR 261 |
|---|---|
| v. | |
| EARRIOUS MOORE | Judge Elaine E. Bucklo |

## **GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

Over a period of roughly two hours on the afternoon of Thursday, April 26, 2018, the defendant Earrious Moore shot his brother in the arm, then went on a violent carjacking rampage in the Gold Coast neighborhood of Chicago during which he carjacked four victims and attempted to carjack two others, and shot two victims, before being arrested in a building lobby on Lake Shore Drive. The violence and terror the defendant wrought on the victims of his carjacking spree will likely never be forgotten by his victims and those who witnessed these appalling events. Based on the violent and repeated nature of the offense, and the defendant's history and characteristics, including his disciplinary record while detained in this case, the government respectfully requests a Guidelines sentence of 151 months of incarceration, to be followed by the statutorily mandated period of 7 years of incarceration pursuant to 18 U.S.C. § 924(c)(1)(A). This sentence is sufficient but not greater than necessary to satisfy the principles set forth in 18 U.S.C. § 3553(a).

## BACKGROUND

**1.** **Offense Conduct** (PSR ¶¶ 14-24)

As outlined in the Presentence Investigation Report (PSR) and Plea Agreement (R. 187) in this case, defendant was convicted of two counts of carjacking, one count

1

of attempted carjacking, and one count of brandishing a firearm in relation to a crime of violence. PSR ¶¶ 5-7; *see also* Government's Version of the Offense, attached thereto. Specifically, the defendant committed the following carjackings and attempted carjackings on April 26, 2018:

- 4:15 p.m., carjacked a 2011 Jeep Patriot Sport, during which the defendant pulled out a loaded .40 caliber Smith & Wesson pistol with an extended magazine (the "Smith & Wesson") and pointed it at Victim A, and said "Get the fuck out of the car and give me everything you got and drop your cell phones." In response, Victim A, and Individuals A, B, and C all exited the Jeep and the defendant entered it and drove away. The defendant also stole Individual B's cell phone.

- 5:10 p.m., carjacked a 2009 Jaguar XF, during which the defendant approached pointed the Smith & Wesson at Victim B and screamed "Get the fuck out of the car, I'm taking your car. Leave your phone." The defendant stole Victim B's phone and later crashed the Jaguar into several parked cars.

- 5:30 p.m., carjacked a 2016 Ford Escape SE, during which the defendant pointed the Smith & Wesson at Victim C and told Victim C to get out of the car, then drove away in the Ford.

- 5:50 p.m., attempted to carjack a 2010 Nissan Maxima. During this attempted carjacking, the defendant approached the Nissan as it was standing at a stop light near Lake Shore Drive, raised the Smith & Wesson, told Victim D to get

out of the car, then fired the Smith & Wesson and shot Victim D in his right arm. The defendant then ran away down the street.

- 6:00 p.m., attempted to carjack a 2016 Mercedes Benz S550 during which the defendant approached the Mercedes as it was sitting in traffic on Lake Shore Drive and pointed the Smith & Wesson at Victim F. Victim F ducked his head and pressed the accelerator. As Victim F was speeding away, the defendant shot him in the back of his left shoulder.[1]

Multiple police officers responding to the carjacking spree arrested the defendant in the lobby of a building on Lake Shore Drive, holding the Smith & Wesson with the extended magazine.

**2.    Offense Level** (PSR ¶¶ 32-76)

Count One

      i.    The base offense level is 20, pursuant to Guideline § 2B3.1(a).

      ii.    Pursuant to Guideline § 2B3.1(b)(2)(B), a 6-level enhancement applies because a firearm was otherwise used.

      iii.    Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

---

[1] The defendant also carjacked a fourth victim, at approximately 5:55 p.m. During this carjacking, the defendant approached a black Jeep Patriot, opened the driver's side door, and pointed the Smith & Wesson at the driver, and told the driver to the effect of "get out of the fucking car." The victim immediately complied and the defendant drove away in the car. This carjacking was not charged in this case due to insufficient evidence that the vehicle had been transported, shipped, or received in interstate commerce.

iv. The total offense level for Count One is therefore 28.

Count Five

v. The base offense level is 20, pursuant to Guideline §§ 2B3.1(a).

vi. Pursuant to application note 4 to Guideline § 2K2.4, the enhancement in Guideline § 2B3.1(b)(2) does not apply because defendant is subject to a statutory consecutive sentence under 18 U.S.C. § 924(c).

vii. Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

viii. The total offense level for Count Six is therefore 22.

Count Six

ix. Pursuant to Guideline § 2K2.4, the guideline sentence for Count Six is the term of imprisonment required by statute, which is required to run consecutive to any other term of imprisonment imposed on the defendant. The term of imprisonment required by statute is a seven-year mandatory minimum term under Title 18, United States Code, Section 924(c)(1)(A)(ii).

Count Nine

x. The base offense level is 20, pursuant to Guideline §§ 2B3.1(a) and 2X1.1(a).

xi. Pursuant to Guideline § 2B3.1(b)(2)(A), a 7-level enhancement applies because a firearm was discharged.

xii. Pursuant to Guideline § 2B3.1(b)(3)(b), a 4-level enhancement applies because a victim sustained serious bodily injury.

xiii. Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

xiv. The total offense level for Count Nine is therefore 33.

Stipulated Offense One

xv. The base offense level is 20, pursuant to Guideline § 2B3.1(a) and 2X1.1(a).

xvi. Pursuant to Guideline § 2B3.1(b)(2)(A), a 7-level enhancement applies because a firearm was discharged.

xvii. Pursuant to Guideline § 2B3.1(b)(3)(b), a 4-level enhancement applies because a victim sustained serious bodily injury.

xviii. Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

xix. The total offense level for Count One is therefore 33.

Stipulated Offense Two

xx. The base offense level is 20, pursuant to Guideline § 2B3.1(a).

5

xxi. Pursuant to Guideline § 2B3.1(b)(2)(B), a 6-level enhancement applies because a firearm was otherwise used.

xxii. Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

xxiii. The total offense level for Count One is therefore 28.

Grouping

xxiv. Pursuant to Guideline § 3D1.2(d), Counts One, Five, and Nine, and Stipulated Offenses One and Two are not grouped together and each offense is a separate group. Pursuant to Guideline §§ 2K2.4(b) and 3D1.1(b)(1), the grouping rules do not apply to the firearm offense (Count Six).

Combined Offense Level

xxv. Count Nine has an offense level of 33. That group is assigned one unit, pursuant to Guideline § 3D1.4(a).

xxvi. Stipulated Offense One has an offense level of 33, which is equally as serious as Count Nine. Therefore, Stipulated Offense One is assigned one unit, pursuant to Guideline § 3D1.4(a).

xxvii. Count One and Stipulated Offense Two each have an offense level of 28, which is 5 levels less serious than Counts Nine. Therefore, Count One, Stipulated Offense One, and Stipulated Offense Two are each assigned one-half unit, pursuant to Guideline § 3D1.4(b).

xxviii. Count Five has an offense level of 22, which is 11 levels less serious than Count Nine. Therefore, Count Five is assigned zero units, pursuant to Guideline § 3D1.4(c).

xxix. The total number of units assigned is three. Pursuant to Guideline § 3D1.4, when the number of units is three, then three levels are added, and the offense level for the group that has the highest offense level (Count Nine) is increased by 3 levels.

xxx. Therefore, the combined offense level is 36.

### 3. Acceptance of Responsibility (PSR ¶¶ 78-79)

Because the defendant timely accepted responsibility for his actions, the combined offense level should be decreased by three points.

Therefore, based on the above, this Court should find that the defendant's total offense level is **33**.

### 4. Criminal History Category and Guideline Range

The government agrees with the calculation in the PSR, that the defendant has 3 criminal history points and that his criminal history category is II. PSR ¶¶ 87-92.[2] The defendant's guideline range is 151 to 188 months' imprisonment. *Id.* ¶ 170.

## ARGUMENT ON THE FACTORS SET FORTH IN 18 U.S.C. § 3553(A)

This Court should impose the guideline sentence of 151 months' imprisonment, to be followed by the mandatory consecutive 7 years of incarceration pursuant to 18

---

[2] The parties' plea agreement did not contemplate the criminal conviction described in paragraph 88 of the PSR. The government nevertheless agrees with Probation that it is a scoreable conviction.

U.S.C. § 924(c)(1)(a)(ii), after taking into account the factors set forth in 18 U.S.C. § 3553(a).

1. **Nature and Circumstances of the Offense**

The nature and circumstances of the offense are disturbing. After shooting his brother in a domestic altercation on the west side of Chicago, the defendant traveled to Gold Coast where he either carjacked or attempted to carjack no fewer than six cars, some of them containing multiple terrified victims. The victims conveyed that in most, if not all of the carjackings, the defendant told them to "get the fuck out of the car" and pointed a two-toned semiautomatic handgun with an intimidating extended magazine at them at point blank rage, sometimes through the window, sometimes after forcefully opening throwing open the driver's side door. The defendant also instructed multiple of his victims to leave their cellphones in the car, effectively robbing them of their ability to call for help. Multiple victims conveyed that they believed the defendant was going to shoot them in the head—to kill them.

During the carjacking of Victim D, Victim D was in his Nissan Maxima at a stop light at Oak and Rush Streets, facing east, headed to Lake Shore Drive during rush hour. As Victim D was standing at the red light, the defendant approached him and pointed the gun at him and told him to get out of the car. Before the stunned victim could comply, the defendant shot him in the arm before running off into the street. But perhaps most disturbing of all was the last carjacking. Victim F described to investigators that he was sitting in traffic facing north on Lake Shore Drive, when he heard a loud screeching sound, and then noticed a blurry dark colored "flash" dash in front of his vehicle. Eyewitnesses described the screeching sound as the defendant

8

screeching to a halt in the middle of the road in a black Jeep he had just carjacked. As Victim F turned his head toward the buildings to the west of Lake Shore Drive, he saw the defendant approaching him in his car holding a gun pointed directly at him, from about six feet away. Victim F thought he was about to be killed, so he ducked, closed his eyes, and stepped on the accelerator. As he was driving away, he felt a bullet pierce his left shoulder. Victim F later saw police escorting the defendant into the back of a police cruiser as Victim F was being loaded into an ambulance, and recalled that the defendant "nodded" at him.

The nature and circumstances of the offenses in this case are nothing short of chilling, and will be remembered by the victims and eyewitnesses forever. The defendant had no concern about the safety of Chicagoans or even his own family on April 26, 2018. In a single violent afternoon, the defendant shot his own brother and two other victims—one of them in the back as he was speeding away trying to escape from the defendant—and violently carjacked six individuals—four of them successfully. The facts of this case are aggravating, and the Court should consider them as such under section 3553(a).

  **2. History and Characteristics of the Defendant and the Need to Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence**

The PSR describes that the defendant has three criminal convictions which all involve violence or threatening conduct. The defendant threatened to shoot a police officer in 2012, and punched the pregnant mother of his child in the face in 2017. PSR ¶¶ 87, 89. The PSR documents several other incidents that did not result in convictions but nonetheless reflect violence or abusive conduct. *Id.* ¶¶ 96, 99, 100.

9

Equally troubling is the defendant's disciplinary history while incarcerated in this case, which the PSR describes in detail. *Id.* ¶ 12. According to the PSR, the defendant incurred 40 disciplinary infractions while detained at the MCC between May 2021 and January 2024, ranging from fighting, to spitting on staff, to destruction of property. Since March 2024, when the defendant was transferred to the Jerome Combs Detention Center, he has incurred three disciplinary infractions, including for fighting. *Id.* ¶ 13.

The PSR reflects that the defendant has exhibited "severe behavioral concerns" since at least October 2005, when he was approximately 11 years old, and describes a troubling relationship between the defendant and the mother of his oldest child. ¶¶ 122, 155. The defendant does not have a significant employment history, and has not participated in vocational training programs, or educational or substance abuse courses since his transfer to Jerome Combs, although it appears that he did participate in an education course and substance abuse treatment while detained at the MCC. *Id.* ¶¶ 12-13, 158.

In mitigation, the PSR reflects that the defendant had a troubled childhood, including being victimized by physical and sexual abuse. *Id.* ¶¶ 117-118.

The Court should impose a sentence that accounts for the violent and intimidating conduct outlined above, reflects the extraordinary seriousness of this offense and the need to deter the defendant and others from future illicit conduct. The sentence should reflect the defendant's disregard for the law, criminal history, and disciplinary history during the pendency of this case. The sentence should also

take into account the defendant's acceptance of responsibility in this case and the mitigating factors described above.

### 3. Recommended Conditions of Supervised Release

Given the circumstances of the offense, the government agrees with the PSR that this Court must impose a term of supervised release of not more than three years on Counts One and Five, and not more than five years on Counts Six and Nine, and that those terms will run concurrently. PSR ¶¶ 172-175. For the reasons highlighted further in Government's Exhibit 1, the government agrees with the supervised release conditions recommended by Probation.

### CONCLUSION

For the reasons set forth above, and in consideration of the factors enumerated under 18 U.S.C. § 3553(a), the government respectfully requests that this Court impose a guidelines sentence of 151 months of incarceration, to be followed by the statutorily mandated 7 years of incarceration.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: /s/ Alejandro G. Ortega
Alejandro G. Ortega
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-4129